UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFERY DUANE RAGAN,<br><br>Plaintiff,<br><br>v.<br><br>JOHN SALYER and CHAD MULLENCUPP,<br><br>Defendants. | CAUSE NO. 3:23-CV-44-DRL-MGG |

OPINION AND ORDER

Jeffery Duane Ragan, a prisoner without a lawyer, filed a complaint. ECF 1-2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Ragan alleges that on February 28, 2021, he was injured at Westville Correctional Facility when a faulty door crushed his pinky finger, resulting in its amputation. ECF 1-2 at 3. He alleges the heavy steel door to his unit, Unit O2 in the I.C. Complex, did not have a handle or a closure on it. *Id.* When it was medication time on his unit, he says that Officer Chad Mullencupp unlocked the door but then sat in a chair across the hall, watching the unit residents leaving, rather than standing by the door. *Id.*

at 4. Mr. Ragan alleges he was new to the unit and did not know the door was broken. *Id.* When he pushed the door open, Officer Mullencupp yelled, "Don't let that door slam!" *Id.* In his attempt to catch the door, Mr. Ragan's finger got smashed in it. *Id.*

Mr. Ragan alleges that his finger was crushed and a bone was hanging out the side. ECF 1-2 at 4. Mr. Ragan says he walked over to where the medication was being distributed, and the nurse instructed a correctional officer to take him immediately to medical. *Id.* After a detour to photograph the injury, Mr. Ragan arrived at medical. *Id.* at 4-5. The nurse tried to call Dr. Dishita Patel, who was on call, but the doctor could not be reached right away because she was at the airport. *Id.* at 5. Eventually, she was contacted, and Mr. Ragan was approved to go to an outside hospital. *Id.* Two days later, an outside doctor determined that the finger could not be saved and had to be amputated. Mr. Ragan alleges the finger could not be saved because of how long the bone had been exposed and because it had gotten contaminated at the prison. *Id.*

Mr. Ragan complains about the pain management he received at the prison. He says because he was on Naltraxone, he was only given over-the-counter pain medication. ECF 1-2 at 5. He alleges that at one point, Dr. Patel offered him Cymbalta, which he says is a psych medication. *Id.* at 6. But after he agreed to try it, she said he couldn't take it after all because of the other psych medication he was taking. *Id.*

Mr. Ragan alleges he was interviewed by Safety Director John Salyer afterwards. ECF 1-2 at 6. In the course of the interview, he reports that he learned Mr. Salyer knew the door was broken and that other inmates had been hurt by it before. *Id.* After Mr. Ragan's injury, Mr. Salyer allegedly had maintenance put a closure on the faulty

2

door. *Id.* Mr. Ragan sues Warden John Galipeau, Mr. Salyer, Officer Mullencupp, Dr. Patel, Dr. John Martin, and Grievance Specialist John Harvil.

"[T]o state a claim under the Eighth Amendment for deliberate indifference to a hazardous condition of confinement, [a prisoner] needed only to allege that [a defendant] deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Prison officials "must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016). Giving him the favorable inferences to which he is entitled at this stage of the proceedings, Mr. Ragan states a plausible Eighth Amendment claim against Safety Director Salyer and Officer Mulencupp, the two defendants who are alleged to have known about the faulty door and the prior injuries from it, but did not take steps to prevent the harm from occurring.

Mr. Ragan, however, does not state a claim against Warden John Galipeau for his injury. He alleges that Warden Galipeau interviewed him after the accident, but there are no allegations that the warden was aware of the faulty door or prior injuries before Mr. Ragan's accident. Warden Galipeau cannot be held responsible for his employees' failure to do their jobs unless he was also personally involved somehow. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Here, the complaint alleges Warden Galipeau's involvement only after the injury had already occurred, which is not enough to show the warden was deliberate indifferent to a risk of harm.

3

Turning to the medical defendants, the complaint does not state a claim for inadequate medical care. Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board*, 394 F.3d at 478.

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotations and citations omitted). A mere disagreement with medical professionals about the appropriate course of treatment doesn't establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *McNeil*, 16 F.3d 123 at 124; *Estelle*, 429 U.S. at 106 (negligence or medical malpractice do not constitute

4

deliberate indifference). Even incompetence doesn't state a claim for deliberate indifference. *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Furthermore, inmates are neither "entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

As to Dr. Patel, the hours-long delay Mr. Ragan experienced before going to the hospital is not actionable because he has not established deliberate indifference on her part. Her temporary unavailability while on call constitutes negligence at most, not deliberate indifference, under these circumstances.

In addition, the allegations do not support a claim for deliberate indifference based on Dr. Patel's pain management decisions. The complaint demonstrates that she exercised medical judgment when treating Mr. Ragan's pain. Mr. Ragan explains that she did not prescribe him anything stronger than over-the-counter pain medication because he was on Naltrexone. "Naltrexone is a medication approved by the Food and Drug Administration (FDA) to treat both alcohol use disorder (AUD) and opioid use disorder (OUD). Substance Abuse and Mental Health Services Administration, *Naltrexone*.[1] "Patients taking naltrexone should not use any other opioids or illicit drugs; drink alcohol; or take sedatives, tranquilizers, or other drugs." *Id.*; s*ee What can I take for pain while on Vivitrol?* (listing the pain medication safe to take while on Vivitrol (naltrexone) as acetaminophen, NSAIDs, topical analgesics, antidepressants (which may help nerve

---

[1] Available at https://www.samhsa.gov/medications-substance-use-disorders/medications-counseling-related-conditions/naltrexone (last visited May 22, 2023).

5

pain), and anti-seizure medications (which may help nerve pain)).[2] Thus, the complaint establishes that Dr. Patel's decision not to prescribe a stronger pain medication was based on her medical judgment that he should not take it while on Naltrexone. Moreover, the allegations show that she considered other options, and offered him Cymbalta (Duloxetine), which, though it is an antidepressant, can also be used to treat nerve pain. *See* Michael Lunn *et al.*, *Duloxetine for Treating Painful Neuropathy or Chronic Pain*.[3] Ultimately, though, she determined that Mr. Ragan could not safely take Cymbalta because of his other medications. The complaint establishes that Dr. Patel used her professional judgment in making medication decisions, and there is nothing to suggest administering only over-the-counter pain medication was a substantial departure of care for a person taking Naltrexone.

As to Dr. John Martin, Mr. Ragan alleges that he saw that doctor in August 2022—a year and a half after the accident. ECF 1-2 at 7. Mr. Ragan alleges that Dr. Martin took him off the psych meds that he had been on for the past five years. *Id.* Whether that decision was constitutionally adequate is outside the scope of this lawsuit, which concerns the treatment Mr. Ragan received for his hand injury. Claims in a single lawsuit must be related either because the same defendant is involved in each claim or the claims all stem from the same transaction or occurrence and there is a common question of law or fact. Fed. R. Civ. P. 18(a), 20(a)(2); *see George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)

---

[2] Available at https://www.drugs.com/medical-answers/pain-vivitrol-3558332/ (last visited May 22, 2023).

[3] Available at https://pubmed.ncbi.nlm.nih.gov/19821395/ (last visited May 22, 2023).

("Unrelated claims against different defendants belong in different suits"). It is unclear how this is related to Mr. Ragan's hand injury, and therefore Mr. Ragan cannot proceed against Dr. Martin in this lawsuit.

Finally, Mr. Ragan sues Grievance Specialist John Harvil for allegedly preventing him from exhausting his administrative remedies. This does not state a claim because "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

For these reasons, the court:

(1) GRANTS Jeffery Duane Ragan leave to proceed against Safety Officer John Salyer and Officer Chad Mullencupp in their individual capacities for compensatory and punitive damages for being deliberately indifferent to the risk posed by the faulty door in Mr. Ragan's unit, resulting in injury on February 28, 2021, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES John Galipeau, Dishita Patel, John Martin, and John Harvil;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) John Salyer and Chad Mullencupp at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1-2);

(5) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), John Salyer and Chad Mullencupp to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

May 30, 2023  *s/ Damon R. Leichty*
Judge, United States District Court